UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CLIFFORD CRAVEN,

Plaintiff,

Case No. 1:04-cv-428

v

Hon. Wendell A. Miles

LITTON LOAN SERVICING, LP,
and MICHIGAN HOME FINANCE

Defendants.

_______________________________/

OPINION AND ORDER ON DEFENDANT LITTON LOAN SERVICING'S MOTION FOR SUMMARY DISPOSITION

Plaintiff Clifford Craven filed this *pro se* action accusing defendants Litton Loan Servicing, LP ("Litton") and Michigan Home Finance of numerous violations of federal law, including the Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.* and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2601 *et seq.* The matter is currently before the court on Litton's "Corrected Motion for Summary Disposition" (docket no. 34). Plaintiff has not filed a written response to the motion.

For the reasons to follow, the court grants the motion in part and denies it in part.

**I**

Plaintiff is a resident of Freemont, Michigan. In April, 2003, he obtained a real estate loan in the amount of $330,000.00 from CIT Group/Consumer Finance Inc. ("CIT"). The loan was ostensibly intended to finance plaintiff's purchase of a home located in Hickory Corners,

Michigan from a woman named Barbara Cassin. Repayment of the loan was secured by a mortgage plaintiff executed in favor of CIT. Not long after securing the mortgage, CIT assigned its interest in the mortgage to U.S. Bank National Association ("U.S. Bank"), as trustee for various entities, including defendant Litton.

Plaintiff apparently defaulted on the mortgage payments, and U.S. Bank initiated a foreclosure by advertisement. On June 26, 2003, U.S. Bank, as trustee for Litton and others, purchased the property at a sheriff's sale in Barry County, Michigan. The Barry County sheriff's deed provided a 12-month redemption period.

Although it is not clear what initiated this correspondence, on February 24, 2004, a law firm, acting as a debt collector, wrote to plaintiff, informing him that the total amount required to redeem the Hickory Corners property was $301,852.61. The letter advised that payment should be made in the form of two checks, one payable to U.S. Bank, "as Trustee" in the amount of $301,837.61, and another payable to the law firm in the amount of $15.00. On June 8, 2004, shortly before the redemption period was to expire, plaintiff wrote a letter directed to both the law firm and to Litton, accusing them of violating both state and federal law in connection with their attempts to collect the debt. Plaintiff filed this action on June 25, 2004, just one day before the redemption period was to expire.

Plaintiff's 28-count complaint accuses both Litton and Michigan Home Finance of multiple violations of the TILA and Truth in Lending regulations, Regulation Z, 12 Part 226, as well as multiple violations of RESPA. As the basis for these claims of federal violations, plaintiff alleges that the defendants took an illegal loan and mortgage on the Hickory Corners property by failing to make required disclosures, failing to provide him with copies of

documents, failing to inform him of his rights, and charging him excessive or inflated fees. Plaintiff further alleges that the defendants violated federal and state usury statutes, 12 U.S.C. § 85 and M.C.L. § 438.31 respectively. Plaintiff also alleges that Michigan Home Finance committed common law fraud by using "altered" 1099 forms in order to make it appear that plaintiff qualified for the loan. As relief, plaintiff seeks rescission of both the mortgage and the note, in addition to damages. Plaintiff has also demanded injunctive relief enjoining defendants' foreclosure on the property and "other activities," Complaint at 17, although he has not to date filed a motion for preliminary injunction.[1]

The allegations of plaintiff's complaint do not – for the most part – distinguish between Litton and Michigan Home Finance. According to exhibits provided by Litton in support of its motion, Michigan Home Finance appears to be a mortgage broker which was paid fees in excess of $5,000.00 in connection with the closing of the transaction. On November 24, 2004, the court entered an order dismissing Michigan Home Finance from the action without prejudice based on plaintiff's failure to make timely service on that defendant pursuant to Fed.R.Civ.P. 4(m). Michigan Home Finance is therefore no longer a party to this action, and only the claims against Litton remain.

---

[1]It appears that plaintiff's request for injunctive relief preventing a foreclosure was moot even before he filed this action, insofar as the property had already been sold at a sheriff's sale.

In its motion, Litton argues that shortly after his purported purchase of the Hickory Corners property, plaintiff executed a quit claim deed transferring his interest in the property back to Cassin in exchange for $1.00. Brief in Support (unpaginated), at 2; Exhibit K. Although this circumstance might have been relevant had plaintiff filed a motion for injunctive relief, it is unclear what relevance the quit claim deed bears to Litton's present motion.

**II**

Pursuant to Rule 56, summary judgment should be granted when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). For purposes of Rule 56, a fact is material if it might affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510 (1986). The moving party has the burden of demonstrating that no genuine issue of fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552-2553 (1986).

Plaintiff has not to date filed a written response to the motion.[2] Instead, plaintiff has, on at least three separate occasions, requested continuances and/or extensions of the case deadlines due to either poor health or an inability to secure counsel. (Docket nos. 15, 20, 26, 29) On September 15, 2005, the court issued an order (docket no. 35) granting the continuances sought by plaintiff, the most recent of which asked for continuance through the first week of September, 2005.

[2]Although Litton's "Corrected Motion" was not filed until September 12, 2005, Litton actually first attempted to file its motion on May 13, 2005. On the latter and earlier date, Litton appears to have instead inadvertently electronically filed only a brief in support, exhibits, and two identical certificates of service. (The contents of docket no. 23 contain a "main document" which is actually a certificate of service, not a motion.) However, because the certificate of service indicates that Litton served its motion on plaintiff on May 13, 2005 even though Litton failed to electronically submit the motion to the court at that time, the court deems the motion now ripe for decision pursuant to W.D. Mich. L. Civ. R. 7.2(c).

**III**

In its Corrected Motion, Litton argues, among other things, that it is not a proper party to this action because it did not participate in the closing of plaintiff's mortgage loan and never held the mortgage on the Hickory Corners property. Almost incidentally, Litton also asserts that plaintiff does not reside at the property, but that Barbara Cassin, with whom plaintiff has some unspecified relationship, has continued to reside there. In its brief in support, Litton essentially accuses plaintiff of various acts of wrongdoing, including defrauding a mortgage company. Litton's brief does not specifically address any of the 28 separate claims asserted in the complaint, instead collectively deeming them to be "a myriad of confusing and baseless allegations" or "sham issues."[3] Resolution of Litton's motion is made particularly difficult by Litton's failure to cite either a single case or a single numbered statutory provision which pertains to the legal claims at issue.[4]

---

[3]Litton also sought to have the court impose sanctions on plaintiff under Fed.R.Civ.P. 11 because, according to Litton, plaintiff's claims against it are baseless and were filed only to delay eviction of a non-party – presumably Cassin – from the Hickory Corners property. In an order (docket no. 37) entered on September 15, 2005, the court denied Litton's motion for sanctions because Litton failed to comply with Fed.R.Civ.P. 11(c)(1)(A)'s 21-day "safe harbor" provision, which has been a requirement of the rule since its 1993 amendment. The Sixth Circuit has expressly ruled that Rule 11 sanctions are unavailable where the moving party fails to serve a timely "safe harbor" letter. First Bank of Marietta v. Hartford Underwriters Ins. Co., 307 F.3d 501, 510-511 (6th Cir. 2002); accord Ridder v. City of Springfield, 109 F.3d 288, 297 (6th Cir. 1997), cert. denied, 118 S. Ct. 687 (1998) ("Sanctions under Rule 11 are unavailable unless the motion for sanctions is served on the opposing party for the full twenty-one day ‹safe harbor' period before it is filed with or presented to the court"). The certificate of service which Litton filed with its motion for sanctions lists a service date which is the same as the date on which Litton filed its motion, and thus Litton failed to establish that it followed the procedure specified by Rule 11.

[4]In a particularly unusual gesture, Litton's counsel has submitted her own affidavit, in which she provides details of statements made during settlement negotiations initiated by (continued...)

Although Litton has failed to specifically address why no genuine issue of material fact remains with respect to each of plaintiff's numerous claims, the court will nonetheless consider the motion to the extent that Litton makes the argument that it is not a proper party to this action because (1) it did not participate in the closing of plaintiff's mortgage loan, and (2) it never held the mortgage. The court will divide its analysis into two parts: first, the federal claims, and second, the state law claims.

## A

## FEDERAL CLAIMS

Plaintiff has asserted federal claims under the TILA, RESPA, and the federal usury statute. Even though Litton's motion does not separately address each of these claims, the court will attempt to do so in determining whether Litton has shown that it is entitled to summary judgment as a matter of federal law on plaintiff's specific federal claims.

### 1. TILA Claims

Litton argues that it is not a proper party to this action because it did not participate in the closing of plaintiff's loan and never held the mortgage on the Hickory Corners property.

---

[4](...continued)
plaintiff's daughter, Rosemary Craven. Exhibit R (Affidavit of Michelle K. Clark). In both its motion and brief in support, Litton relies on these statements contained in counsel's affidavit. However, evidence of statements made in compromise negotiations is generally not admissible. Fed.R.Evid. 408. In addition, counsel should generally not testify at trial, no matter for which party she testifies. Ahern v. Scholz, 85 F.3d 774, 791 (1st Cir. 1996). Under the circumstances, it is not clear why Litton believes the court should consider this information as proper under Fed.R.Civ.P. 56(e), which affirmatively requires that supporting affidavits "shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."

Litton has presented evidence which indicates on its face that the company did not participate in the closing of the loan. Unfortunately, Litton has offered the court very little assistance understanding how this fact alone substantiates its legal position with regard to plaintiff's claims under the TILA. In its motion, Litton admits that it was the "servicer" of the Hickory Corners mortgage. Corrected Motion, ¶ 14. Moreover, although Litton's brief insists that plaintiff has not documented that Litton "ever had any interest" in the Hickory Corners property, Brief in Support (unpaginated) at 8, Litton's own supporting documents indicate that Litton and other entities, acting through U.S. Bank as trustee, acquired the mortgage by assignment. Exhibit B. (In its brief, Litton does at one point concede that it had in fact purchased the property through U.S. Bank as trustee at the sheriff's sale. Brief in Support (unpaginated) at 7. Litton's supporting documents identify it as one of the purchasers. Exhibit H.)

What Litton has not attempted to do is to articulate the law which it believes justifies its legal argument that the TILA does not subject it to liability. The TILA's definition of a "creditor," in pertinent part,

> refers only to a person who both (1) regularly extends, whether in connection with loans, sales of property or services, or otherwise, consumer credit which is payable by agreement in more than four installments or for which the payment of a finance charge is or may be required, and (2) is the person to whom the debt arising from the consumer credit transaction is initially payable on the face of the evidence of indebtedness or, if there is no such evidence of indebtedness, by agreement. . . .

15 U.S.C. § 1602(f).[5] Litton's submissions do indeed indicate that it is not a "creditor" within

---

[5]Although the phrase "consumer credit transaction" is not specifically defined in the
(continued...)

the second element of this definition because Litton is not "the person to whom the debt arising from the consumer credit transaction is *initially payable on the face of the evidence of indebtedness*[.]" 15 U.S.C. § 1602(f)(2) (emphasis supplied). However, what Litton has failed to address in its motion is whether it may have liability under the TILA as an assignee or servicer.

Section 1641 of the TILA specifically addresses the liability of assignees and servicers for violations of the statute. Litton has not discussed the provisions of 15 U.S.C. § 1641 in connection with its argument that it has no liability under the TILA. Even though Litton itself might not have been the original creditor, Litton both serviced the loan and together with others – acting through U.S. Bank as trustee – held the mortgage as trustee for Litton. Unless and until Litton has shown that no genuine issue of fact remains regarding its potential liability as an assignee or servicer, the court cannot conclude that Litton is entitled to judgment as a matter of

---

[5](...continued)
TILA, the statute provides that the adjective "consumer," used with reference to a credit transaction, "characterizes the transaction as one in which the party to whom credit is offered or extended is a natural person, and the money, property, or services which are the subject of the transaction are primarily for personal, family, or household purposes." 15 U.S.C. § 1602(h). The statute also exempts "transactions involving extensions of credit primarily for business, commercial, or agricultural purposes." 15 U.S.C. § 1603(1). In addition, the TILA defines "credit" as "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(e). Therefore, it is the purpose of the transaction and the purposes for which credit is extended which determine whether the transaction falls within the Act. See Riviere v. Banner Chevrolet, Inc., 184 F.3d 457, 462 (5th Cir. 1999) (court must examine transaction as a whole and the purpose for which the credit was extended in order to determine whether transaction was primarily consumer or commercial in nature). Here, Litton has not argued that the transaction at issue was not a "consumer credit transaction" within the meaning of the TILA.

law on plaintiff's claim for damages under the TILA.[6]

**2. RESPA Claims**

Litton does not specifically address the law of RESPA either in its motion or supporting brief. However, the court nonetheless construes Litton's argument – that it is not a proper party to this action – as a defense which this defendant intended to assert both under the TILA and RESPA. The court therefore assumes that Litton contends that it is not a proper defendant under the latter statute because it did not participate in the closing of plaintiff's loan and was not the original holder of the mortgage on the Hickory Corners property.

RESPA was enacted to make

> significant reforms in the real estate settlement process . . . to insure that consumers throughout the Nation are provided with greater and more timely information on the nature and costs of the settlement process and are protected from unnecessarily high settlement charges caused by certain abusive practices that have developed in some areas of the country.

12 U .S.C. § 2601(a). RESPA applies to any "federally related mortgage loan[,]" as specifically defined by the statute. 12 U.S.C. § 2602(1). The statute prohibits, among other things, the charging of unearned fees for settlement services, the collection of excess escrow monies, inaccurate escrow account reporting, and the imposition of fees for statements required by

[6]Although Litton has not separately addressed the issue of remedy with respect to plaintiff's TILA claim, it does appear that plaintiff is most likely not entitled to the remedy of rescission. Section 1635 of the Act, which addresses the right of rescission as to certain transactions, exempts from its terms "a residential mortgage transaction" as defined in 15 U.S.C. § 1602(w). Section 1602(w) defines the term "residential mortgage transaction" as "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."

RESPA and TILA. 12 U.S.C. §§ 2607, 2609, 2610. In this action, plaintiff's complaint invokes 12 U.S.C. § 2610, which prohibits lenders and servicers from imposing fees for the preparation of RESPA and TILA statements.

As noted above, Litton has not in its motion or supporting brief specifically addressed plaintiff's RESPA claim. Litton has therefore not shown why no genuine issue remains regarding whether Litton is a proper defendant on this claim. However, it is noted that in the past, the circuits have been split on the question of whether a private right of action exists under sections of RESPA for which no such action is specified in the statute See McAnaney v. Astoria Financial Corp., 357 F. Supp.2d 578, 590 (E.D.N.Y. 2005) (citing cases finding no private right of action under section 10 of RESPA, 12 U.S.C. § 2609); see also Vega v. First Federal Savings & Loan Assn. of Detroit, 622 F.2d 918, 925 n.8 (6th Cir. 1980) (expressing belief that "Congress intended to create a private remedy for violations" of 12 U.S.C. §§ 2609 and 2610). Currently, RESPA provides for both concurrent federal and state court jurisdiction for actions brought "pursuant to the provisions of section 2605, 2607, or 2608" of the statute, and for a one- or three-year limitation period (one year for violations of sections 2607 and 2609 and three years for violations of section 2605). 12 U.S.C. § 2614. The statute is silent as to any jurisdiction or limitation period for actions under section 2610. Under the circumstances, the court concludes, as has at least one other court, that no private right of action exists under section 12 of RESPA, 12 U.S.C. § 2610. McAnaney, 357 F. Supp.2d at 591.

**3. Federal Usury Claim**

As with plaintiff's other federal claims, Litton does not specifically address the federal

usury statute in its motion.  However, once again the court nonetheless construes Litton's argument –  that it is not a proper party to this action – as a defense which Litton intended to assert under this statute.  The court therefore assumes that Litton contends that it is not a proper defendant under the latter statute because it did not participate in the closing of plaintiff's loan and was not the original holder of the mortgage on the Hickory Corners property.

Plaintiff's complaint alleges that he was charged a usurious rate of interest in violation of the federal usury statute, 12 U.S.C. § 85.  Section 85 provides in pertinent part as follows:

> Any association may take, receive, reserve, and charge on any loan or discount made, or upon any notes, bills of exchange, or other evidences of debt, interest at the rate allowed by the laws of the State, Territory, or District where the bank is located, or at a rate of 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and no more, except that where by the laws of any State a different rate is limited for banks organized under state laws, the rate so limited shall be allowed for associations organized or existing in any such State under title 62 of the Revised Statutes. When no rate is fixed by the laws of the State, or Territory, or District, the bank may take, receive, reserve, or charge a rate not exceeding 7 per centum, or 1 per centum in excess of the discount rate on ninety-day commercial paper in effect at the Federal reserve bank in the Federal reserve district where the bank is located, whichever may be the greater, and such interest may be taken in advance, reckoning the days for which the note, bill, or other evidence of debt has to run.

Litton has not adequately articulated why, under federal law, it is not a proper party to plaintiff's usury claim based on this statute.  Litton does not, in its motion, contend that it is not subject to the National Bank Act, of which 12 U.S.C. § 85 is a part, nor has Litton cited to any provision of the National Bank Act which supports its apparent position that its status as an assignee-servicer precludes liability under the statute's provisions.  Under the circumstances,

Litton has failed to show that no genuine issue remains, and the court cannot conclude at this time that Litton is entitled to judgment as a matter of law on plaintiff's federal usury claim.

**B**

**STATE LAW CLAIMS**

Plaintiff has asserted a state law claim under Michigan's usury statute and a claim of common law fraud. Even though Litton's motion does not separately address each of these claims, the court will attempt to do so in determining whether Litton has shown that it is entitled to summary judgment as a matter of law on plaintiff's state law-based claims.

**1. State Usury Claim**

As with plaintiff's federal claims, Litton does not specifically address M.C.L. § 438.31 – Michigan's usury statute – in its motion. However, once again the court nonetheless construes Litton's argument – that it is not a proper party to this action – as a defense which Litton intended to assert under this statute. The court therefore assumes that Litton contends that it is not a proper defendant under M.C.L. § 438.31 because it did not participate in the closing of plaintiff's loan and was not the original holder of the mortgage on the Hickory Corners property.

Plaintiff's complaint alleges that he was charged a usurious rate of interest in violation of Michigan's usury statute, M.C.L. § 438.31. Litton has not adequately articulated why, under state law, it is not a proper party to this claim. Litton has not asserted, for instance, that it is a national bank against whom the National Bank Act "provides an exclusive federal cause of action for usury[.]" See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 10-11, 123 S.Ct. 2058,

2064 (2003) ("In actions against national banks for usury, [12 U.S.C. §§ 85 and 86] supersede both the substantive and the remedial provisions of state usury laws and create a federal remedy for overcharges that is exclusive"). What is clear, however, despite Litton's failure to address the applicable law in this regard, is that although Michigan recognizes usury as a defense, the state does not recognize usury as a separate cause of action. See Thelen v. Ducharme, 151 Mich. App. 441, 390 N.W.2d 264, 268 (1986) ("The basic rule in Michigan is that usury is a defense and that there is no right to repayment of usurious interest by means of an independent action") (citing Michigan Mobile Homeowners Ass'n v. Bank of the Commonwealth, 56 Mich. App. 206, 216, 223 N.W.2d 725 (1974)); In re Cadillac Wildwood Development Corp., 138 B.R. 854, 862 (1992) (debtor could receive credit toward principal but could not recover from lender "since usury can only be asserted as a defense to payment and not as a cause of action"). Because this action involves a claim of usury and not a defense to payment, it is apparent that the issue of usury is not properly a part of this action and, to that extent, Litton is entitled to summary judgment as a matter of law on plaintiff's state law claim of usury.

**2. Common Law Fraud Claim**

As with all of plaintiff's other claims, both state and federal, Litton does not specifically address the issue of common law fraud in its motion. However, once again the court nonetheless construes Litton's argument – that it is not a proper party to this action – as a defense which Litton intended to assert to plaintiff's claim of fraud. The court therefore assumes that Litton contends that it cannot be held liable to plaintiff for common law fraud because it did not participate in the closing of plaintiff's loan.

Plaintiff's complaint alleges as his fraud claim, specifically, that "Defendant, Michigan Home Finance altered 1099 forms to look like W-2 pay stubs and altered the income of the Plaintiff, so that the loan obtained would 'go through.'" Complaint at 17, ¶ 121. To the extent that Litton contends that it is not a proper party to this claim, the court agrees, insofar as the complaint does not allege that Litton was a party to this specific alteration of documents. Under the circumstances, the court concludes that Litton is entitled to judgment as a matter of law on plaintiff's claim of common law fraud.

## CONCLUSION

For the foregoing reasons, the court orders as follows:

1. The court GRANTS the motion for summary judgment as to the following claims: plaintiff's claim for rescission under the TILA; plaintiff's claim under § 12 of RESPA, 12 U.S.C. § 2610; plaintiff's state law claim of usury; and plaintiff's claim of common law fraud.

2. The court DENIES the motion for summary judgment as to the following claims: plaintiff's claims for damages under the TILA; and plaintiff's federal claim of usury.

Ordered this 23rd day of September, 2005.

/s/ Robert Holmes Bell
Robert Holmes Bell
Chief United States District Judge
for:
Wendell A. Miles
Senior United States District Judge